STATE OF NORTH CAROLINA v. DAVID ALLEN CARTER

No. COA11-36

(Filed 1 November 2011)

**1. Sexual Offenses—first-degree—motion to dismiss—sufficiency of evidence—anal penetration**

The trial court did not err by denying defendant's motion to dismiss the first-degree sexual offense charge in 08 CRS 57286 based on alleged insufficient evidence of anal penetration. The testimony of the child victim and a sexual assault nurse examiner provided sufficient evidence.

**2. Evidence—social worker testimony—characterization of child sex abuse victim—overly dramatic, manipulative, and attention seeking behavior—not shorthand statement of fact**

The trial court did not err in a first-degree sexual offense case by excluding the testimony of a social worker to the effect that during therapy sessions the child victim was overly dramatic, manipulative, and exhibited attention seeking behavior. Defendant failed to cite authority as required by N.C. R. App. P. 28(b)(6) to support his corroboration argument. Further, the social worker's characterizations of the child's behavior did not relate to an expert opinion which the social worker was qualified to deliver. Finally, it was not an admissible shorthand statement of fact.

**3. Evidence—hearsay—medical diagnosis exception—state of mind—excited utterance**

The trial court did not err in a first-degree sexual offense case by refusing to admit the child victim's comment to the effect that she knew defendant would not do it and that she knew he was coming home. It could not be concluded that the child understood that a social worker was conducting the play-therapy sessions for the purpose of providing medical diagnosis or treatment. Further, the record did not establish that the statement constituted an admissible excited utterance.

**4. Criminal Law—jury instructions—referring to child as victim—absence of any impermissible opinion**

The trial court did not commit plain error in a first-degree sexual offense case by describing the child as the "victim" during jury instructions given the absence of any other indication that the trial court had expressed an impermissible opinion and the

fact that the trial court properly placed the burden of proof on the State.

**5. Appeal and Error—preservation of issues—failure to specifically argue—failure to cite authority**

Although defendant contended that the trial court erred in a first-degree sexual offense case by denying defendant's pretrial motion for an independent psychological evaluation of the child victim, defendant did not preserve this argument because he did not advance any specific argument or cite any authority in support of this contention.

**6. Sexual Offenses—attempted first-degree sexual offense—jury instruction—guilt**

The trial court committed plain error by failing to instruct the jury concerning the issue of defendant's guilt of attempted first-degree sexual offense in 08 CRS 57286 given the sharp conflict in evidence relating to the issue of defendant's guilt, the importance of allowing the jury to consider all relevant issues prior to rendering a verdict, and the absence of any indication that defendant opposed submission of an attempt issue.

**7. Satellite-Based Monitoring—enrollment in lifetime satellite-based monitoring—first-degree sexual offense not an aggravating offense**

The Court of Appeals treated defendant's appeal as a petition for writ of *certiorari* and concluded that the trial court erred by requiring defendant to enroll in lifetime satellite-based monitoring (SBM). First-degree sexual offense under N.C.G.S. § 14-27.4(a)(1) does not qualify as an aggravated offense. The case was remanded for a proper risk assessment and a new SBM hearing.

Appeal by defendant from judgments entered 27 May 2010 by Judge W. David Lee in Iredell County Superior Court. Heard in the Court of Appeals 16 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Angenette R. Stephenson, for the State.*

*Mark Montgomery, for defendant-appellant.*

ERVIN, Judge.

STATE v. CARTER

[216 N.C. App. 453 (2011)]

Defendant David Allen Carter appeals from judgments sentencing him to 192 months to 240 months imprisonment based upon his conviction for first-degree sexual offense in File No. 08 CrS 57285 and to a consecutive term of 192 months to 240 months imprisonment based upon his conviction for first-degree sexual offense in File No. 08 CrS 57286. On appeal, Defendant contends that the trial court erred by (1) denying his motion to dismiss the first-degree sexual offense charge lodged against him in File No. 08 CrS 57286 for insufficiency of the evidence; (2) failing to instruct the jury on the lesser included offense of attempted first-degree sexual offense in File No. 08 CrS 57286; (3) excluding testimony that the complainant was "overly dramatic," "manipulative," and "attention seeking;" (4) limiting the purposes for which the jury could consider certain extrajudicial statements by the complainant; (5) making reference to "the victim" while instructing the jury; (6) denying his motion for an independent psychological evaluation of the complainant; and (7) ordering Defendant to enroll in lifetime satellite-based monitoring. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that Defendant is entitled to a new trial in File No. 08 CrS 57286 and that the trial court's SBM order in File No. 08 CrS 57285 should be vacated and that that case should be remanded to the trial court for further proceedings not inconsistent with this opinion. Otherwise, we find no error in the trial court's judgment in File No. 08 CrS 57285.

## I.  Factual Background

### A.  Substantive Facts

#### 1.  State's Evidence

Vanessa,[1] who is Defendant's step-daughter, was born on 19 April 2000. When Vanessa asked to use the family's home computer in June 2008, Defendant had her go into the bathroom, where he made her pull down her pants. At that point, Defendant stuck his "doodle" in or on her bottom, which was where her "poop" came out, and made her "suck" on his "doodle." According to Vanessa, similar incidents had occurred on other occasions. Vanessa claimed that Defendant made her suck on his "doodle" at least "one day each month." Vanessa had accused Defendant of engaging in similar behavior a year earlier, when the family lived in South Carolina.

---

1. Vanessa is a pseudonym that will be used throughout this opinion for the purpose of protecting the complainant's privacy and for ease of reading.

On 4 August 2008, Vanessa told her mother that Defendant was doing things to her, including putting his " 'doodle' on her bum." Eight days later, Vanessa's mother telephoned Sergeant Todd Marcum of the Mooresville Police Department to report Vanessa's allegations. On 14 August 2008, Sergeant Marcum interviewed Defendant, who denied having engaged in any improper behavior with Vanessa. On the same date, Vanessa told Captain Julie Gibson of the Iredell County Sheriff's Department that Defendant had put his penis in her "butt" 50 times. In certain pictures that she drew during this interview, Vanessa depicted Defendant as putting his "doodle" in her bottom and mouth.

Tammy Carroll, a sexual assault nurse examiner at Iredell Memorial Hospital, noted a small anal fissure, which is a tear or an erosion of skin caused by trauma, while examining Vanessa. According to Ms. Carroll, a penis "inside a butt crack or . . . on butt cheeks," "constipation," "a large amount of diarrhea," or "any type of other trauma" could cause an anal fissure.

### 2. Defendant's Evidence

On the day prior to the earlier occasion on which Vanessa had accused Defendant of molesting her, Vanessa was upset about being punished for wandering too far from home. When asked about her allegations against Defendant on the following day, Vanessa said that she "didn't really mean that" and acknowledged that she was "just angry [and] . . . upset." Similarly, Vanessa threw a "complete tantrum" on 4 August 2010 because a family trip to an amusement park in Charlotte was cut short due to inclement weather. Vanessa had seen Defendant and her mother having sex and watching adult television and had been caught looking at adult magazines. Vanessa's mother claimed that Vanessa was not being "truthful" or "very honest" when she accused Defendant of sexually abusing her.

### B. Procedural History

On 13 October 2008, the Iredell County grand jury returned bills of indictment charging Defendant with two counts of first-degree sexual offense and one count of crime against nature. The charges against Defendant came on for trial before the trial court and a jury at the 24 May 2010 criminal session of the Iredell County Superior Court. At the conclusion of all the evidence, the State voluntarily dismissed the crime against nature charge. On 27 May 2010, the jury found Defendant guilty of both counts of first-degree sexual offense. As a result, the trial court sentenced Defendant to consecutive terms

of 192 months to 240 months imprisonment based upon Defendant's convictions for two counts of first-degree sexual offense. In addition, the trial court ordered Defendant to enroll in SBM for the duration of his natural life. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Legal Analysis

### A. Sufficiency of Evidence of Anal Penetration

[1] On appeal, Defendant contends that the trial court erred by denying his motion to dismiss the first-degree sexual offense charge lodged against him in File No. 08 CrS 57286 on the grounds that the State failed to provide sufficient evidence of anal penetration. We disagree.

When reviewing a challenge to the sufficiency of the evidence to support a conviction, this Court determines "whether [the State presented] substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990) (citation omitted). "[T]he trial court must examine the evidence in the light most advantageous to the State, drawing all reasonable inferences from the evidence in favor of the State's case." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (citation omitted), *cert. denied*, 537 U.S. 1005, 123 S. Ct. 495, 154 L. Ed. 2d 403 (2002).

According to N.C. Gen. Stat. § 14-27.4(a)(1), "[a] person is guilty of a sexual offense in the first degree if the person engages in a sexual act with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." A "sexual act" includes "cunnilingus, fellatio, analingus, or anal intercourse . . . [and] the penetration, however slight, by any object into the genital or anal opening of another person's body." N.C. Gen. Stat. § 14-27.1. "Anal intercourse requires penetration of the anal opening of the victim by the penis[.]" *State v. DeLeonardo*, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986) (citation omitted). As a result, in order to prove Defendant's guilt of first-degree sexual offense in File No. 08 CrS 57286, the State was required to offer evidence tending to show that Defendant's penis penetrated Vanessa's anus. *State v. Norman*, 196 N.C. App. 779, 786, 675 S.E.2d 395, 400, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 382-83 (2009).

The record contains contradictory evidence concerning the extent to which anal penetration actually occurred. Vanessa testified that Defendant's penis was between her "butt cheeks," "on" or "over"

her anus, and pressing on her anal opening. However, when asked if Defendant "stuck . . . his penis . . . in a certain part of [her] body," Vanessa answered "yes." In addition, Vanessa testified that Defendant was "pushing his doodle in really, really hard, and for some reason I'm very, very delicate, and he was pushing it really hard and it would make it feel very sore and stuff [a]nd sometimes it would feel like it would be bleeding." According to Ms. Carroll, Vanessa's anal fissure could have been caused by a penis being placed "inside a butt crack or on a butthole or on butt cheeks" or by "[c]onstipation, a large amount of diarrhea, . . . irritable bowel syndrome . . . [or] any type of other trauma." Finally, a drawing that Vanessa made depicting the Defendant "putting his doodle in [her] bottom" was admitted into evidence.

Defendant analogizes this case to *State v. Hicks*, 319 N.C. 84, 90, 352 S.E.2d 424, 427 (1987), in which the Supreme Court reversed a defendant's first-degree sexual offense conviction. In concluding that testimony that the defendant "put his penis in the back of" the complainant did not establish the necessary penetration, the Supreme Court stated that, "[g]iven the ambiguity of [the victim's] testimony as to anal intercourse, and absent corroborative evidence (such as physiological or demonstrative evidence)," the evidence did not suffice to support a conviction. *Id.* On the other hand, in *State v. Norman*, 196 N.C. App. at 779, 675 S.E.2d at 395, we upheld the defendant's conviction against a sufficiency of the evidence challenge given that the complainant testified that the defendant "[stuck] his ding-a-ling in my back or my bottom," *Id.* at 787, 675 S.E.2d at 400-01; responded affirmatively when asked if the defendant "put [his ding-a-ling] in [the complainant's] butt . . . inside of it," *Id.* at 787, 675 S.E.2d at 401; and stated that "it hurts when [Defendant] sticks his ding-a-ling in my front and in my back." *Id.* After carefully reviewing the record in this case, we believe that the testimony presented at trial is like that in *Norman* and unlike that in *Hicks*.

At its essence, Defendant's challenge to the sufficiency of the evidence to support his conviction for first-degree sexual offense in File No. 08 CrS 57286 rests upon a contention that Vanessa's testimony was "ambiguous" and insufficiently credible. However, the weight and credibility of a witness' testimony are for the jury, and not this Court, to determine. *State v. Moses*, 350 N.C. 741, 767, 517 S.E.2d 853, 869 (1999), *cert. denied*, 528 U.S. 1124, 120 S. Ct. 951, 145 L. Ed. 2d 826 (2000). In this case, Vanessa stated on at least one occasion that Defendant's penis penetrated her anus. In addition, Ms. Carroll testified that Vanessa's anal fissure could have resulted from trauma to

the anal area. Such testimony is sufficient, if credited by a jury, to support a finding of anal penetration. As a result, Defendant is not entitled to relief on the basis of this contention.

## B. Evidentiary Issues

### 1. Exclusion of Witness Stivenson's Testimony

[2] Secondly, Defendant contends that the trial court erred by excluding the testimony of Social Worker Erica Stivenson to the effect that, during therapy sessions, Vanessa was "overly dramatic," "manipulative," and exhibited "attention seeking behavior." We do not find Defendant's argument persuasive.

Ms. Stivenson, a Certified Licensed Social Worker, conducted "play therapy" sessions with Vanessa. Ms. Stivenson testified that, while she was not qualified to provide a medical diagnosis, she could provide "diagnostic impressions . . . [relating to] what we suspect is going on with the individual and . . . what we're working towards treating and targeting." On *voir dire*, Ms. Stivenson testified that Vanessa exhibited "acting out [], attention seeking [], and manipulative behaviors" and that such behaviors suggested the existence of an underlying psychological issue for which Vanessa needed to be referred to a specialist. The trial court excluded Ms. Stivenson's testimony concerning whether Vanessa "[had] any sort of mood swings or manipulative behavior or acting out or other matters that would cause [Stivenson] to want to send [Vanessa] to get a psychological evaluation" and limited the scope of Ms. Stivenson's testimony to what she observed and heard.

In his brief, Defendant contends that Ms. Stivenson's testimony was admissible for the purpose of corroborating the testimony of Vanessa's mother to the effect that Vanessa was "manipulative" and "attention seeking." However, Defendant failed to cite any authority in support of this component of his argument. According to N.C.R. App. P. 28(b)(6), "[t]he body of the argument . . . shall contain citations of the authorities upon which the appellant relies." As a result, Defendant is not entitled to appellate relief based on his contention that the challenged portion of Ms. Stivenson's testimony was admissible for corroborative purposes. *Dunton v. Ayscue*, ___ N.C. App. ___, ___, 690 S.E.2d 752, 755 (2010) (holding that the plaintiff's arguments were deemed "abandoned" given his failure to cite any authority in support of his position).

Secondly, Defendant contends that Ms. Stivenson's testimony constituted admissible expert opinion testimony. N.C. Gen. Stat. § 8C-1, Rule 702(a) provides, in pertinent part, that, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." The admissibility of expert testimony hinges upon the expert's "special expertise[,] . . . that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E.2d 905, 911 (1978). Assuming that a proper foundation has been laid, an expert witness may testify concerning the profiles exhibited by sexually abused children and whether a particular child exhibits symptoms or characteristics consistent with such profiles. *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002) (per curiam) (citations omitted).[2]

Defendant never questioned Ms. Stivenson about the profiles of sexually abused children or whether Vanessa's behaviors were consistent with such profiles. On the contrary, Ms. Stivenson testified that she was not qualified to render a medical diagnosis and never made any specific medical diagnosis based upon Vanessa's behavior. As a result, Ms. Stivenson's characterizations of Vanessa's behavior did not relate to an expert opinion which Ms. Stivenson was qualified to deliver. *See State v. Murphy*, 100 N.C. App. 33, 39-40, 394 S.E.2d 300, 304 (1990) (upholding the admission of testimony by a clinical psychologist concerning behavior exhibited by sexually abused children and the extent to which these characteristics were exhibited by the complainant on the grounds that the witness was qualified to render such an opinion and that the challenged testimony could assist the jury in understanding the behavior patterns exhibited by sexually abused children). As a result, the trial court correctly determined that Ms. Stivenson was not entitled to "offer any opinion as to medical treatment."

Finally, Defendant contends that Ms. Stivenson's testimony constituted an admissible "shorthand statement" of fact concerning her "observations of [Vanessa] during the counseling sessions." Although Defendant emphasizes that "[t]he defense was that [Vanessa] fabricated or exaggerated her claims of abuse" and argues that the

---

2. We review the trial court's rulings concerning the admissibility of expert testimony at trial for an abuse of discretion. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted).

"excluded testimony would have furthered that defense" by providing the "jury [with] information from which it could determine whether or not [Vanessa] was telling the truth," the relevancy of this testimony hinged upon the extent to which it constituted an inadmissible commentary on Vanessa's credibility. *State v. Hannon*, 118 N.C. App. 448, 450, 455 S.E.2d 494, 496 (1995) (holding that the trial court erred by admitting testimony that "the victim was telling the truth on this particular occasion" regardless of "whether we view her testimony this way[] or as an opinion on the prosecuting witness's credibility"). Thus, we conclude that none of Defendant's challenges to the trial court's decision to exclude Ms. Stivenson's testimony that Vanessa exhibited "acting out [], attention seeking [], and manipulative behaviors" have merit.

## 2. Vanessa's Statement to Ms. Stivenson

**[3]** In addition, Defendant contends that the trial court erred by not admitting Vanessa's comment to the effect that "I know [Defendant] wouldn't do it. I know he's coming home" solely for corroborative purposes on the grounds that this statement was admissible for substantive purposes as either a statement made for the purpose of medical diagnosis or treatment or as an excited utterance. Once again, we fail to find Defendant's argument persuasive.

At trial, Ms. Stivenson testified that, during a 31 March 2009 "play therapy" session, Vanessa became tearful and indicated that she "miss[ed Defendant] and want[ed] him to come home [so that] they [could] become a family again." In response, Ms. Stivenson told Vanessa that, if Defendant had done the "things [Vanessa] accused him of he wouldn't be coming home," leading Vanessa to reply, "well, I know he wouldn't do it. I know he's coming home." The trial court admitted Vanessa's statement subject to a limiting instruction that the jury could only consider this statement for the purpose of showing Vanessa's state of mind and not as "evidence of any events that led to that then existing state of mind."[3]

According to well-established North Carolina law, statements made for the purpose of obtaining medical diagnosis or treatment do not constitute inadmissible hearsay. N.C. Gen. Stat. § 8C-1, Rule 803(4). In evaluating whether an extrajudicial statement is admissible

---

3. A trial court's determination concerning the extent to which an out-of-court statement constitutes inadmissible hearsay is subject to *de novo* review. *State v. Miller*, 197 N.C. App. 78, 87-88, 676 S.E.2d 546, 552, *disc. review denied*, 363 N.C. 586, 683 S.E.2d 216 (2009).

pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(4), the trial court must determine that (1) "the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment" and that (2) "the declarant's statements were reasonably pertinent to medical diagnosis or treatment." *State v. Hinnant*, 351 N.C. 277, 289, 523 S.E.2d 663, 670-71 (2000), *cert. denied*, 544 U.S. 982, 125 S. Ct. 1846, 161 L. Ed. 2d 737 (2005). In making such a determination, the trial court must consider "all objective circumstances of record surrounding the declarant's statement," including whether any person explained the medical purpose underlying the interview, whether any person explained the importance of giving truthful answers to the child, and whether the interview took place in a medical environment. *Id.* at 287-89, 523 S.E.2d at 669-71. The medical diagnosis exception does not render statements made to non-physicians after the receipt of initial medical treatment admissible because, "[i]f the declarant is no longer in need of immediate medical attention, the motivation to speak truthfully is no longer present." *Id.* at 289, 523 S.E.2d at 670.

We are unable to conclude, in light of all the objective circumstances, that Vanessa understood that Ms. Stivenson was conducting the "play-therapy sessions" for the purpose of providing medical diagnosis or treatment. The "play therapy" sessions began more than two weeks after Vanessa's initial examination by Ms. Carroll, and were conducted at a battered women's shelter in a "very colorful" room filled with "board games, art supplies, Play-Doh, dolls, blocks, cars, [and] all [other types] of things for . . . children to engage in" rather than in a medical environment. *See Hinnant*, 351 N.C. at 290, 523 S.E.2d at 671. Although, Ms. Stivenson did emphasize that it was important for Vanessa to tell the truth, the record contains no indication that she ever told Vanessa that the "play therapy" sessions served a medical purpose or that Vanessa understood that any of her statements might be used for diagnostic or treatment-related purposes. In addition, the record does not tend to show that the statement in question had any relevance to the provision of medical diagnosis or treatment, since Ms. Stivenson clearly admitted that she was not qualified to engage in such activities. As a result, the trial court did not err by refusing to admit Vanessa's statement pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(4).

A statement is admissible as an excited utterance if it "relat[es] to a startling event or condition [and is] made while the declarant was under the stress of excitement caused by the event or condition."

N.C. Gen. Stat. § 8C-1, Rule 803(2). "In order to fall within this hearsay exception, there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985) (citation omitted). The determination as to whether a particular statement constitutes an excited utterance depends upon the surrounding facts and circumstances. *See, e.g., State v. Guice*, 141 N.C. App. 177, 201, 541 S.E.2d 474, 489 (2000), *appeal dismissed, disc. review denied in part and allowed for other purpose in part*, 353 N.C. 731, 551 S.E.2d 112-13 (2001), *modified and aff'd on remand*, 151 N.C. App. 293, 564 S.E.2d 925 (2002).

After examining the surrounding circumstances, we conclude that the trial court did not err by refusing to admit Vanessa's statement pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(2). The record contains no description of Vanessa's behavior or mental state at the time of her conversation with Ms. Stivenson. For that reason, we cannot discern whether Vanessa was excited, startled, or under the stress of excitement at the relevant time. Although she had previously been "tearful", there is no indication that Vanessa remained in such a state at the time that she made the statement in question. As a result, the record does not establish that this statement constituted an admissible excited utterance. *See State v. Wilkerson*, 363 N.C. 382, 417, 683 S.E.2d 174, 195-96 (2009) (holding that a particular statement was admissible as an excited utterance when the record tended to show that the declarant became visibly upset due to defendant's threats prior to making statement), *cert. denied*, ___ U.S. ___, 130 S. Ct. 2104, 176 L. Ed. 2d 734 (2010); *State v. Coria*, 131 N.C. App. 449, 452, 508 S.E.2d 1, 3 (1998) (holding that the declarant's statements were properly admitted as excited utterances given the trial court's finding that the declarant was "very excited and upset"). As a result, neither of Defendant's efforts to establish the admission of Vanessa's statement for substantive purposes has merit.

### C. Reference to Vanessa as the "Victim"

[4] Thirdly, Defendant contends that the trial court committed plain error by describing Vanessa as the "victim" in the course of its instructions to the jury. We disagree.

In its jury instructions, the trial court repeatedly referred to Vanessa as the "victim." According to Defendant, these references constituted an improper expression of opinion in violation of N.C. Gen. Stat. § 15A-1222, which prohibits a trial judge from "express[ing] . . .

any opinion in the presence of the jury on any question of fact to be decided by the jury." As a result of Defendant's failure to object to the challenged instructions at trial, we must evaluate this claim utilizing a plain error standard of review. *State v. Richardson*, 112 N.C. App. 58, 66, 434 S.E.2d 657, 663 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 132 (1994). In order to establish plain error, an appealing party must show "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) (citations omitted).

The Supreme Court rejected a contention indistinguishable from the one that Defendant has advanced here in *State v. McCarroll*, 336 N.C. 559, 565-66, 445 S.E.2d 18, 22 (1994), reasoning that no plain error had been shown despite the delivery of similar instructions given the absence of any other indication that the trial court had expressed an impermissible opinion and the fact that the trial court properly placed the burden of proof on the State. In this case, as in *McCarroll*, the trial court properly placed the burden of proof on the State in its jury instructions. Moreover, the trial court did not engage in any other activity that tended to constitute an impermissible expression of opinion. On the contrary, the trial court specifically told the jury that "[t]he law requires the presiding judge to be impartial" and that it "should not infer from any statement I have made or question I have asked that any of the evidence is to be believed or disbelieved, that a fact has been proved, or what your findings ought to be." As a result, "[w]e cannot hold that the reference to [Vanessa] as the victim was an error so basic and lacking in its elements that justice could not have been done."[4] *McCarroll*, 336 N.C. at 566, 445 S.E.2d at 22.

### D. Independent Psychological Evaluation

[5] Fourth, Defendant contends that the trial court erred by denying his pre-trial motion for an independent psychological evaluation of Vanessa. Defendant's argument lacks merit.

On 10 May 2010, Defendant filed a motion seeking an independent psychological and medical examination of Vanessa. Defendant sought the requested examination for the purpose of determining whether Vanessa understood that her statements would be used to

---

4. For the same reasons, we conclude that Defendant has failed to demonstrate that he received deficient representation because of he failure of his trial counsel to object to these references to the complainant as "the victim." *See State v. Pratt*, 161 N.C. App. 161, 165, 587 S.E.2d 437, 440 (2003).

prosecute the Defendant and whether a reactive attachment disorder might have affected Vanessa's ability to know what she was doing when she made her accusations against Defendant. The trial court denied Defendant's motion.

In his brief, Defendant candidly concedes that the trial court's ruling was consistent with existing North Carolina law. *State v. Horn*, 337 N.C. 449, 451-52, 446 S.E.2d 52, 53 (1994). Even so, Defendant contends that the trial court's ruling violated his federal and state constitutional rights to present a defense and to due process. Defendant has not, however, advanced any specific argument or cited any authority in support of this contention. As a result, Defendant is not entitled to appellate relief based on the denial of this motion.

### E. Failure to Submit Attempted First-Degree Sexual Offense

[6] Fifth, Defendant contends that the trial court committed plain error by failing to instruct the jury concerning the issue of his guilt of attempted first-degree sexual offense in File No. 08 CRS 57286. Defendant's contention has merit.

"A trial court is only required to instruct the jury on a lesser included offense when there is evidence presented from which the jury could find that such offense was committed." *State v. Stinson*, 127 N.C. App. 252, 258, 489 S.E.2d 182, 186 (1997). "The determining factor is the presence of evidence to support a conviction of the lesser included offense." *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984) (citations omitted). An attempted first-degree rape instruction is "warranted when the evidence pertaining to the crucial element of penetration conflicts or when, from the evidence presented, the jury may draw conflicting inferences." *State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986) (citations omitted), *superseded by statute on other grounds*, by N.C. Gen. Stat. § 8C-1, Rule 404(b), *as recognized in State v. Moore*, 335 N.C. 567, 440 S.E.2d 797 (1994). In view of the fact that his trial counsel failed to request that an attempt issue be submitted to the jury, we must utilize the plain error standard of review in evaluating the merits of this claim. *State v. Brunson*, 187 N.C. App. 472, 477, 653 S.E.2d 552, 555 (2007).

Even a cursory examination of the record reveals that the evidence concerning the issue of penetration was in conflict. Although Vanessa answered in the affirmative when asked if Defendant "stuck ... his penis ... in ... her bottom," she also testified that Defendant placed his penis "on [her] butthole" and that Defendant's penis

"would be between my butt cheeks . . . over my butthole or hole in my anus." When asked to clarify her testimony, Vanessa stated that "he would put his doodle between my butt cheeks and it will be sort of pressing on my butthole." Finally, Ms. Carroll testified that a "penis . . . inside a butt crack" or "on a butthole or on butt cheeks" could cause an anal fissure if "enough vigor [is] pressed against the anus" and that other types of trauma, such as "[c]onstipation, a large amount of diarrhea, . . . irritable bowel syndrome . . . [or] any type of other trauma" could have caused Vanessa's anal fissure as well.

In *State v. Couser*, 163 N.C. App. 727, 734, 594 S.E.2d 420, 425 (2004), this Court upheld the delivery of an attempt instruction in a case in which the complainant testified that she was not sure whether the defendant had penetrated her vagina, where she had told others that the defendant had attempted to rape her, and where the abrasions found on her vaginal opening were "not specific to, nor diagnostic of, sexual abuse." Similarly, in *State v. Johnson*, 317 N.C. at 436-37, 347 S.E.2d at 18-19, the Supreme Court held that an attempt instruction should have been given because the victim had made two statements stating that the defendant had attempted, but had been unable, to achieve penetration. We find *Johnson* and *Couser* controlling in this case. Although certain portions of Vanessa's testimony tended to show that anal penetration had occurred, her statements that Defendant put his penis "on" or "between my butt cheeks" or that he "pressed against" her anus with his penis support an inference to the contrary. Moreover, although "evidence that no trauma occurred to [the victim] is not sufficient to establish a conflict of evidence as to penetration," *State v. Thomas*, 187 N.C. App. 140, 146, 651 S.E.2d 924, 928 (2007), Ms. Carroll's testimony indicated that Vanessa's anal fissure could have resulted from attempted, as well as completed, penetration. As a result, a jury could rationally have found Defendant guilty of attempted first-degree sexual offense in File No. 08 CrS 57286. Moreover, given the sharp conflict in the evidence relating to the issue of Defendant's guilt, the importance of allowing the jury to consider all relevant issues prior to rendering a verdict, and the absence of any indication that Defendant opposed submission of an attempt issue, *see State v. Walker*, 167 N.C. App. 110, 117-18 605 S.E.2d 647, 653-54 (2004) (refusing to provide plain error relief in a case in which the defendant specifically opposed the submission of a lesser included offense), *vacated in part on other grounds*, 361 N.C. 160, 695 S.E.2d 750 (2006), we conclude that the trial court's failure to instruct the jury on attempted first-degree sexual offense constituted

STATE v. CARTER

[216 N.C. App. 453 (2011)]

plain error, *see State v. Collins*, 334 N.C. 54, 62-63, 431 S.E.2d 188, 193 (1993) (holding that the trial court committed plain error by failing to instruct the jury concerning the issue of the defendant's guilt of attempted murder); *see also State v. Clark*, 201 N.C. App. 319, 327, 689 S.E.2d 553, 559 (2009) (holding that the trial court committed plain error by failing to instruct the jury on the issue of the defendant's guilt of assault on a government official), and that Defendant is entitled to a new trial in File No. 08 CrS 57286.

### F. SBM Order

[7] Finally, Defendant argues that the trial court erroneously required him to enroll in lifetime SBM. We agree.[5]

### 1. Appealability

Prior to reaching the merits of Defendant's challenge to the trial court's SBM order, we must address the extent, if any, to which Defendant's appeal is properly before this Court. Defendant noted his appeal from the trial court's SBM order orally in open court. "[O]ral notice pursuant to N.C.R. App. P. 4(a)(1) is insufficient to confer jurisdiction on this Court" in a case arising from a trial court order requiring a litigant to enroll in SBM. *State v. Brooks*, ___ N.C. App. ___, ___, 693 S.E.2d 204, 206 (2010). Instead, a defendant seeking to appeal an order requiring enrollment in SBM must note his or her appeal in writing pursuant to N.C. R. App. P. 3(a), with any failure to do so necessitating dismissal of the defendant's appeal. *Id.* Thus, we dismiss Defendant's appeal because of his failure to file a written notice of appeal from the trial court's SBM order.

However, "[t]his Court does have the authority pursuant to [N.C. R. App. P.] 21(a)(1) to 'treat the purported appeal as a petition for writ of certiorari' and grant it in our discretion." *Luther v. Seawell*, 191 N.C. App. 139, 142, 662 S.E.2d 1, 3 (2008) (quoting *State v. SanMiguel*, 74 N.C. App. 276, 277-78, 328 S.E.2d 326, 328 (1985)). Our decision in *Brooks* was filed on 18 May 2010, which was the same day that Defendant's trial began. Defendant's SBM hearing occurred nine days after the filing of our opinion in *Brooks* and eleven days prior to the issuance of the *Brooks* mandate. Thus, "[i]n the interest of justice, and to expedite the decision in the public interest," *Brooks*, ___ N.C. App. at ___, 693 S.E.2d at 206, we exercise our discretion to treat

---

5. As we have already noted, Defendant is entitled to a new trial in File No. 08 CrS 57286. For that reason, we vacate the trial court's order requiring Defendant to enroll in lifetime SBM based upon that conviction. Thus, the discussion in the text relates solely to the trial court's SBM order in File No. 08 CrS 57285.

Defendant's appeal as a petition for the issuance of a writ of *certiorari*, issue the writ, and consider Defendant's challenges to the trial court's SBM order on the merits. *See State v. Clayton*, ___ N.C. App. ___, ___, 697 S.E.2d 428, 431 (2010).

## 2. Defendant's Eligiblity for SBM

N.C. Gen. Stat. § 14-208.40(a) subjects two categories of offenders with reportable convictions to SBM: (1) those qualifying for mandatory lifetime SBM based upon a determination that he or she is a sexually violent predator, a recidivist, or was convicted of an aggravated offense and (2) those who have committed an offense involving the physical, mental, or sexual abuse of a minor and, based upon an appropriate risk assessment, require the "highest level of supervision and monitoring." N.C. Gen. Stat. §§ 14-208.40(a)(1) and (2). In view of the fact that first-degree sexual offense is a "sexually violent offense" as defined in N.C. Gen. Stat. § 14-208.6(5), Defendant was clearly convicted of a "reportable" offense. However, the trial court's decision to the contrary notwithstanding, "first-degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1) does not qualify as an aggravated offense." *State v. Treadway*, ___ N.C. App. ___, ___, 702 S.E.2d 335, 347-48 (2010), *disc. review denied*, 365 N.C. 195, 710 S.E.2d 35 (2011). As a result, the trial court erred by concluding that Defendant was subject to lifetime SBM by virtue of having been convicted of an "aggravated offense."

Although the State concedes that first-degree sexual offense is not an "aggravated offense," it argues that this case should be remanded for a new hearing convened for the purpose of determining whether Defendant should be required to enroll in SBM for a period of years pursuant to N.C. Gen. Stat. §§ 14-208.40A(d) and (e). *State v. King*, ___ N.C. App. ___, ___, 693 S.E.2d 168, 172 (2010) (remanding the case in question for additional findings of fact concerning whether the defendant required the highest possible level of supervision and monitoring following a determination that the trial court had erred by ordering defendant to enroll in lifetime SBM). Given that the offense for which Defendant was convicted involved the physical, mental, or sexual abuse of a minor and given that the required risk assessment was never performed, we are unable to determine whether the State's contention that Defendant should be required to enroll in SBM for a term of years has merit. As a result, we reverse the trial court's order compelling Defendant to enroll in lifetime SBM and remand this case to the trial court for a proper risk assessment and a new SBM hearing.

UNIVERSAL INS. CO. v. BURTON FARM DEV. CO., LLC

[216 N.C. App. 469 (2011)]

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that Defendant is entitled to a new trial in File No. 08 CrS 57286. On the other hand, we find no error in the trial court's judgment in File No. 08 CrS 57285. Finally, we vacate the trial court's SBM orders and remand File No. 08 CrS 57285 to the Iredell County Superior Court for further SBM-related proceedings not inconsistent with this opinion.

NO ERROR IN PART, NEW TRIAL IN PART, REVERSED AND REMANDED IN PART.

Judges McGEE and McCULLOUGH concur.